U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed June 29, 2005

United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| Stephen Kyle Singleton, | § | CASE NO. 05-30531-BJH-7 |
| | § | |
| Debtor. | § | Chapter 7 |
| | § | |

**Memorandum Opinion and Order Granting Dismissal under 11 U.S.C. § 707(b)**

On January 10, 2005 (the "Petition Date"), Stephen Kyle Singleton (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. The United States Trustee ("UST") now seeks dismissal of this bankruptcy case (the "Case") under § 707(b) as a substantial abuse of the provisions of Chapter 7. The Debtor opposes dismissal of the Case. The Court has jurisdiction over this core proceeding in accordance with 28 U.S.C. §§ 1334 and 157(b).

**Contentions of the Parties**

The Trustee contends that if the Debtor (i) eliminated his repayment of an unsecured loan from his employer ($216.67 per month), (ii) eliminated payments for a vehicle he does not drive (a pickup his father drives) ($204.94 per month), and (iii) eliminated or reduced total monthly payments of $804 on a 2004 GMC Yukon (the "Yukon") plus $200 per month for insurance on the Yukon, the Debtor would have the ability to repay a substantial portion of his unsecured debts without any undue hardship. Furthermore, the Trustee contends that the Debtor's purchase of such an expensive vehicle shortly before the Petition Date indicates that the Debtor was not in need of a "fresh start." Accordingly, the UST seeks dismissal of the Case as a substantial abuse of Chapter 7.

In response, the Debtor contends that he purchased the Yukon in May of 2004, almost seven months before the Petition Date, at which time he did not anticipate filing for bankruptcy relief. Instead, the Debtor claims that he is seeking relief under Chapter 7 as a result of a steady accumulation of debt, and that dismissal of the Case is therefore inappropriate. The Debtor further contends that the $804 monthly payment he is making on the Yukon is not substantially higher than the $779 monthly payment he made on his prior vehicle, which he traded in when he purchased the Yukon. Finally, the Debtor contends that even if he reduced his monthly payment on a vehicle to $500, and eliminated the $204.94 monthly payment on the vehicle his father drives and the $216.67 monthly loan payment to his employer, he would only be able to make about a 13% distribution to his unsecured creditors under a 36-month plan in a Chapter 13 case. *See* Debtor's Ex. B (hypothetical schedules I and J prepared by the Debtor for a hypothetical Chapter 13 case). The Debtor argues that this potential distribution to unsecured creditors is insignificant and does not warrant dismissal of the Case for substantial abuse.

For the reasons explained more fully below, the Court disagrees. Based upon the Debtor's own calculations, *see* Debtor's Ex. B, the Debtor has approximately $285 per month of disposable income which could be used to repay unsecured creditors in a hypothetical Chapter 13 case. Even assuming the Debtor's calculations are correct, a 13% distribution to unsecured creditors is a sufficient distribution to cause the Court to conclude that the granting of relief to the Debtor in the Case would be a substantial abuse of Chapter 7. Accordingly, the Case will be dismissed unless the Debtor files a motion to convert the Case to one under Chapter 13 within ten days of the entry of this Memorandum Opinion and Order.

**Legal Analysis**

**Section 707(b) and Substantial Abuse**

Section 707(b) of the Bankruptcy Code provides that a court may dismiss a case filed by an individual Chapter 7 debtor whose debts are primarily consumer debts, if the Court finds that the granting of relief would be a "substantial abuse" of the provisions of Chapter 7.[1] *See* 11 U.S.C. §707(b). However, there is a presumption in favor of granting the relief requested by the debtor. *See id*. Because the Bankruptcy Code is silent as to what constitutes "substantial abuse," it has been judicially defined. While the Fifth Circuit has not yet decided when a bankruptcy case constitutes a substantial abuse of Chapter 7, the lower courts in this circuit have adopted a § 707(b) standard that reflects the "totality of the circumstances" approach set forth in *In re Krohn*, 886 F.2d 123 (6th Cir. 1989). *See, e.g., In re Rathbun*, 309 B.R. 901, 904 (Bankr. N.D. Tex. 2004); *In re Rubio*, 249 B.R. 689, 695 (Bankr. N.D. Tex. 2000). Under this analysis, substantial abuse can be predicated upon either a lack of honesty or need. *See In re Krohn*, 886 F.2d at 126.

---

[1] The Debtor's debts are primarily consumer debts.

>As the Sixth Circuit stated in *Krohn*:
>
>In determining whether to apply § 707(b) to an individual debtor, then, a court should ascertain from the totality of the circumstances whether he is merely seeking an advantage over his creditors, or instead is "honest," in the sense that his relationship with his creditors has been marked by essentially honorable and undeceptive dealings, and whether he is "needy" in the sense that his financial predicament warrants the discharge of his debts in exchange for liquidation of his assets. Substantial abuse can be predicated upon either lack of honesty or want of need.

*Id.* In assessing a debtor's honesty, the *Krohn* court observed that while "[i]t is not possible . . . to list all the factors that may be relevant to ascertaining a debtor's honesty," these factors would include "the debtor's good faith and candor in filing schedules and other documents, whether he has engaged in 'eve of bankruptcy purchases,' and whether he was forced into Chapter 7 by unforeseen or catastrophic events." *Id*. The *Krohn* court further noted that "[a]mong the factors to be considered in deciding whether a debtor is needy is his ability to repay his debts out of future earnings." *Id*. According to the *Krohn* court, other factors to be considered in assessing a debtor's need include

>whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities.

*Id*. at 126-27. *See also*, *In re Rathbun*, 309 B.R. at 904-05; *In re Rubio*, 249 B.R. at 696; *In re Laman*, 221 B.R. 379, 381 (Bankr. N.D. Tex. 1998).

Thus, after reviewing the "totality of the circumstances" present here, the Court is to determine: (i) whether the Debtor is "needy" – *i.e.*, whether he has the ability to make significant payments to creditors from future income, or (ii) whether the Debtor has exhibited a lack of good faith and honesty in his dealings with creditors. An affirmative finding on either issue will overcome

the presumption in favor of granting relief and warrant dismissal of the Case under § 707(b).

**The Debtor's Ability to Pay: Is the Debtor Needy?**

The Court will examine the Debtor's ability to pay in light of the "totality of the circumstances." The Debtor has a stable source of future income. He has worked at Edward's Printing Service for the past ten years and currently has gross monthly income of approximately $3,709.33. *See* UST's Ex. 4 (Schedule I); Debtor's Ex. B (hypothetical Chapter 13 Schedule I). The Debtor's average net monthly take home pay is $2,766.83 (excluding his employer loan payment). *See* Debtor's Ex. B. The Debtor is eligible for relief under Chapter 13. Because the Debtor did not testify at the hearing on the motion to dismiss,[2] the Court is unable to determine the extent to which either state law remedies or private negotiations might assist the Debtor.

However, what is clear from the record is that although the Debtor does not appear to enjoy an extravagant lifestyle generally, his expenses can be reduced without depriving him of life's necessities. For example, the Debtor makes monthly payments of $804 on the Yukon which is valued at approximately $46,198. *See* UST's Ex. 4 (Schedules J and B). While the Debtor argues that his $804 monthly payment on the Yukon is not that much more than his payment on his prior vehicle, that argument ignores the monies the Debtor had to borrow (and now repay) in order to make the required down payment on the Yukon. Specifically, the Debtor borrowed $6,378.96 from Citifinancial, Inc. ("Citifinancial") so that he could make the required down payment on the Yukon. *Compare* UST's Ex. 10 (evidencing a down payment on the Yukon of $6,305.30) *and* UST's Ex. 11 (evidencing a $6,378.96 loan from Citifinancial one week earlier). And, on May 7, 2004, the Debtor signed a promissory note in favor of Citifinancial evidencing this debt (the "Note"). *See* UST's Ex.

---

[2] It is unclear from reviewing the record whether the Debtor appeared at the hearing on the motion to dismiss, other than through his counsel.

**MEMORANDUM OPINION AND ORDER**     **Page 5**

11. To secure repayment of the Note, the Debtor took an apparently unencumbered vehicle, a 1996 Dodge Ram pickup, and pledged it to Citifinancial. The monthly payment on this loan is $204.94.[3] *See* UST's Exs. 11 & 4 (Schedule J). Adding $200 a month for insurance, *see* UST's Ex. 4 (Schedule J), the Debtor's total monthly payment for the privilege of driving the Yukon is $1,208.94 – about 47% of his current net monthly take home pay. *Id*. That is not a reasonable monthly expenditure. The Debtor could certainly find another vehicle – even a used SUV – for substantially less money per month.

If the Debtor reduced his monthly vehicle and related payments, and eliminated his payment to his employer, the Debtor's budget would generate sufficient disposable income to make a meaningful distribution to *all* of his creditors, not just his car creditors and his employer. The Debtor's counsel argued at the hearing that based on the modifications to his Schedules I and J, *see* Debtor's Ex. B, his budget would produce a 13% distribution to unsecured creditors over 36 months.

Although the Debtor argues that a 13% dividend is not a significant enough distribution to warrant dismissal of the Case for substantial abuse, the Court disagrees.[4] Substantial abuse exists where debtors have the ability to pay "a significant dollar amount, irrespective of percentage, to unsecured creditors through such a Chapter 13 . . . plan." *In re Laman*, 221 B.R. at 383-84 (citation omitted). *See also In re Schmidt*, 200 B.R. 36, 39 (Bankr. D. Neb. 1996) ("Neither the percentage of debt that could be paid under a plan, the number of creditors holding unsecured claims, nor the

---

[3] The Debtor's father apparently drives the pickup. The parties characterize this payment as a payment on the truck. While that is partially accurate, this payment was precipitated by the Debtor's desire to purchase the Yukon.

[4] A 13% distribution to unsecured creditors is not an insignificant distribution in this District. The Court believes that the Debtor's unsecured creditors would agree that a 13% distribution is substantially better than a 0% distribution that Chapter 7 will provide.

amount of the Debtor's net monthly disposable income are dispositive of the issue.").[5] Because the Debtor has the ability to pay a significant amount to his unsecured creditors in a Chapter 13 case, the Case must be dismissed in accordance with § 707(b).

**The Debtor's Good Faith: Is the Debtor Honest?**

A review of the Debtor's Schedules, particularly Schedule F, and the Statement of Financial Affairs ("SOFA") reveals some anomalies. For example, the SOFA discloses the Debtor's 2002 income of $36,765, his 2003 income of $47,433, and then discloses $37,257 of "YTD Income." *See* UST's Ex. 5, ¶1. The SOFAs were signed on January 10, 2005. It is unlikely that the Debtor made $37,257 in the first 10 days of 2005. No income is shown for 2004 at all. In addition, Schedule F does not disclose the debt owed to the Debtor's employer. Rather, the existence of a loan from the employer must be inferred from a monthly payroll deduction shown on Schedule I for "loans." *See* UST's Ex. 4. There is no disclosure of the amount of the debt and how it arose in the schedules.

In addition, the Case does not appear to have been precipitated by unforeseen or catastrophic circumstances. According to the Debtor's counsel, the Case stems from the Debtor's "steady accumulation of [consumer] debt." *See* Debtor's Response to Motion to Dismiss Case under 11

---

[5] While many courts have considered the issue, no one accepted definition of "ability to pay" has emerged. *See In re Attanasio*, 218 B.R. 180, 188 n.6 (Bankr. N.D. Ala. 1998) (providing an exhaustive list of court decisions). The courts agree on the starting point – *i.e.*, that Congress intended "to deprive Chapter 7 relief to those who have the realistic ability to pay a substantial portion of their debts, over a reasonable period of time, while living a reasonable lifestyle." *Id.* at 188-89. However, the courts have taken different approaches to "what portion of those debts must be paid, over what length of time, and at what level of personal sacrifice." *See id.* at 189. Some courts have "fairly specific payment thresholds" for § 707(b). *Id.* at 188 n.6. A survey of the list of cases cited in the *Attanasio* decision reveals that many courts appear to require a threshold of at least 50% repayment to unsecured creditors. *See id.* Other courts have a fairly general definition of "ability to pay." *See, e.g., In re Schmidt*, 200 B.R. 36, 39 (Bankr. D. Neb. 1996) (holding that while the ability to fund a chapter 13 plan can be sufficient grounds to find substantial abuse, the court did not find "that the debtor must have the ability to pay off a certain percentage of his or her unsecured debt under a three- or five-year chapter 13 plan"); *In re McCormack*, 159 B.R. 491 (Bankr. N.D. Ohio 1993) ("A reduction in . . . expenses would give the Debtors substantial additional funds to pay creditors without depriving them of food, clothing, shelter and other necessities."). This Court does not believe that a bright-line percentage rule is mandated by Congress. Instead, the Court believes that a more general definition of "substantial abuse" gives the courts the appropriate flexibility to apply the "ability to pay" test to each unique set of facts.

U.S.C. § 707(b), Docket No. 10 (the "Response"), ¶ 8. Finally, the timing of the Debtor's purchase of an expensive vehicle – *i.e.*, the Yukon, further calls the Debtor's good faith into question. Although not literally an "eve of bankruptcy" purchase, it is, however, a purchase far in excess of the Debtor's financial ability to repay, along with his other debts.

When all of these circumstances are considered together, the UST contends that they evidence a lack of honesty on the Debtor's part. Accordingly, the UST requests a dismissal of the Case for substantial abuse.

In the Response, the Debtor explains that the omissions from his Schedules and SOFA were "inadvertent." *See* Response, ¶¶ 2 & 3. And, he offers to amend the Schedules and SOFA to accurately reflect his 2004 and year to date 2005 income, along with the missing information regarding the employer loan. *Id*.

Unfortunately, the Court was not given the opportunity to assess the Debtor's sincerity and credibility because he did not testify at the hearing on the motion to dismiss. So, the only explanation offered for the errors in the Schedules and SOFA is in the Response and counsel's oral argument. Unfortunately, neither are admissible evidence.

In addressing dismissals for substantial abuse, the court in *In re Faulhaber* stated that good faith requires the court to determine "whether the debtor was motivated by a genuine desire to deal with an intolerable debt load fairly and equitably so as to relieve him of an oppressive debt burden and allow him to move post-bankruptcy in a productive manner." 243 B.R. 281, 284 n.5 (Bankr. E.D. Tex. 1999). In light of the Debtor's failure to offer evidence of his good faith in the filing and prosecution of the Case after the UST carried its initial burden of proof to raise a genuine issue of fact regarding the Debtor's good faith and honesty, the Court has no choice but to conclude that the Debtor lacks the good faith necessary to entitle him to proceed in Chapter 7.

**Conclusion**

The totality of circumstances lead this Court to conclude that granting relief in the Case would be a substantial abuse of the Bankruptcy Code. The Court finds that the Debtor has the ability to make significant payments to his creditors. This alone warrants dismissal under § 707(b). Additionally, because the Debtor offered no evidence of his good faith after the UST carried its initial burden of proof to raise a genuine issue regarding the Debtor's good faith and honesty, the Case must also be dismissed for this reason. Accordingly, the UST's motion to dismiss will be granted, and the Case will be dismissed if the Debtor does not convert the Case to one under Chapter 13 within ten days of the entry of this Memorandum Opinion and Order.

**SO ORDERED**.

### End of Order ###